**CARUSO GLYNN, LLC**
Attorneys for Plaintiff
*Compresion Altamira S.A. de C.V.*
242-03 Northern Blvd.
Suite 201
Little Neck, N.Y. 11362
(718) 819-8667
Attorney: Lawrence C. Glynn (LG 6431)
CG File No.: 42.120419.01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AIG SEGUROS MEXICO S.A. de C.V.
a/s/o COMPRESION ALTAMIRA S.A. de C.V.,

              Plaintiff,

  -against-

SAMSUNG ENGINEERING CO., LTD.,

              Defendant.
------------------------------------------------------------x

Case No.:   20 Civ.   (   )

**VERIFIED COMPLAINT**

Plaintiff, AIG SEGUROS MEXICO S.A. de C.V. (hereafter "AIG" or "Plaintiff") as Subrogee of COMPRESION ALTAMIRA, S.A. de C.V. (hereafter "Altamira", by its attorneys **CARUSO GLYNN, LLC**, complaining of the Defendant, alleges upon information and belief that:

**The Parties**

1. At all material times, Plaintiff was a corporation or other business entity existing under foreign law with a principal place of business located at Av. Insurgentes Sur 1136 Tlacoquemecatl, del Valle, Benito Juárez 03219, Ciudad de Mexico, CDMX, Mexico.

2. At all material times, Plaintiff's subrogor was a corporation or other business entity existing under foreign law with a principal place of business located at Torre Optima II, Paseo De Las Palmas 275, Piso 5, Col Lomas de Chapultepec, CP 11000, Mexico. D.F., Mexico

3. At all material times, Defendant SAMSUNG ENGINEERING CO., LTD. (hereafter "SAMSUNG") was and is a corporation or other business entity existing under foreign law with a principal place of business located at Samsung GEC, 500, Sangil-dong, Gangdong-gu, Seoul, Korea, 134-090.

4. At all material times, Samsung, its subsidiaries, agents, servants and/or employees were sales representatives and/or agents for the sale of a certain turbo-compressor unit consisting of a Solar Taurus 70S-1082 gas turbine and a Solar C-40 centrifugal compressor (hereafter referred to interchangeably as the "turbine" or "Unit C") and/or its component parts.

5. At all material times, defendant Samsung, its subsidiaries, agents, servants and/or employees were distributors of the engine.

6. At all material times, defendant Samsung, its subsidiaries, agents, servants and/or employees placed the aforesaid engine into the stream of commerce.

7. At all material times, defendant Samsung, its subsidiaries, agents, servants and/or employees sold the turbine to Plaintiff.

8. At all material times, defendant Samsung, its subsidiaries, agents, servants and/or employees distributed the engine to Plaintiff.

9. At all material times, defendant Samsung, its subsidiaries, agents, servants and/or employees shipped and delivered or caused to be shipped and delivered the engine to Plaintiff.

**Jurisdiction**

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

11. In addition, the Guaranty Agreement ("Guaranty") and the Amended and Restated Coordination Agreement entered into between the parties dated October 24, 2012 ("Coordination

Agreement") includes a law and jurisdiction clause which states that the rights and obligations of the parties shall be governed by and construed in accordance with the laws of the State of New York and that any action be brought in the Southern District of New York.

## Background

12. Altamira is part and parcel of Corporative InterGen ("Intergen") which is one of the leading private electricity producers in Mexico. It has 12 energy plants in operation, representing a total generating capacity of 7,892 MW (6,306 MW of net energy).

13. Intergen operates three compression stations and 65 kilometers of gas pipeline and has invested in a 155MW wind farm.

14. Altamira has four (4) turbo-compressor units, each consisting of a Solar Taurus 70S-1082 gas turbine and a Solar C-40 centrifugal compressor.

15. Each one of these units provides compression services to Pemex Gas and Petroquimica Basica ("PGPB"), by increasing the capacity of the gas pipeline from 1,060 to 1,560 million cubic feet of compressed natural gas, thus improving the availability and transport of natural gas to users in Central and Western Mexico.

16. A compression station, such as the one at issue, is a necessary installation within a network of gas transport because it provides the current (of gas) to increase in pressure at certain points along its predetermined designed length and which is aimed at maintaining the optimum condition of the gas at its destination.

17. The four identical turbo-compressor units were all manufactured by non-party Solar Turbines and were constructed by defendant's affiliate, Grupo Samsung Ingeniería México, S.A. de C.V.

18. The unit at issue (Unit C) was also designated "Unit 3", bearing Serial Number 0818B.

19. All four units are powered by natural gas which is supplied by the same natural gas from the pipelines to which these units are connected and for which these units are used to facilitate the efficient transport thereof.

20. The quality of the natural gas fuel used to power each of the four units is identical.

21. These compressor units began operations on or about December 11, 2014.

22. All four compressor units have operated a similar number of hours and under virtually identical conditions.

23. However, in 2015, problems began to be detected in the functions of only turbine number 3, Serial Number 0818B (Unit C).

24. On January 13, 2015, personnel from Altamira detected certain variations in temperature in the heater for the combustible gas in Unit C.

25. On January 21, 2015, Solar Turbines conducted an inspection of Unit C and detected the presence of naphthalene contaminants when the coalescent filter was drained.

26. Solar Turbines also noticed the presence of excessive contamination at the bottom of the combustible gas filter.

27. In May 2016, personnel from both Altamira and Solar Turbines reported the presence of cracks on the inside of turbine number 3 (Unit C).

28. These cracks appeared along the bead of the weld that joined different parts of the "Combustor Liner," i.e., the cracks were not in the parts themselves but rather in the welding material used for joining the plates together.

29. These cracks were located on the injectors at positions 8 and 9 and were repaired by the end of May 2016.

30. In November 2016, Solar Turbines observed new cracks in Unit C which were once again along the beads of the welds.

31. During one of the routine maintenance jobs carried out by Solar Turbines (the supplier of the maintenance services) in the gas turbine (Unit C), additional fissures were discovered on the injectors at positions 2 and 3. These cracks were repaired and welded together by Solar Turbines.

32. In addition, in November 2016, some cracks were discovered that went beyond the welds and the rings, reaching the fixed components of the "combustor liner." These cracks were found in a part known as the "splash plate."

33. On January 9, 2017, personnel from Altamira conducted an inspection and found two new cracks in the welds of the retaining rings in positions 2 and 3 of the injector.

## First Cause of Action
### (Negligence - Failure to Construct Unit C in a Workmanlike Manner)

34. At all times relevant, Samsung was exclusively responsible for the construction of these turbines, including Unit C.

35. Samsung failed to construct the turbine in a workmanlike manner, by, *inter alia*, using inferior and/or inadequate welding material, Unit C suffered catastrophic internal damage.

36. In addition, Samsung failed to follow the specifications and recommendations made by Solar Turbines in its PILS 162 & 246, nor specification ES9-98, for supplying and conditioning the combustible gas to the turbine.

37. As a result of the Samsung's failure to construct the turbine in a workmanlike manner aforesaid Unit C suffered catastrophic internal damage.

38. As a result of the Samsung's failure to construct the turbine in a workmanlike manner, damage to the splash plate/cover of the combustor and nozzle assembly in the first stage was confirmed, as well as their repair.

39. Solar Turbines made an additional repair recommendation that Unit C receive a new combustor liner as well as 1st stage nozzle assembly to correct damaged components.

40. Supplying parts for the repairs aforesaid totaled $422,231.71.

41. Labor for the aforementioned repairs totaled $219,995.06.

42. In light of the foregoing, Plaintiff has suffered damages in the amount of $642,226.77.

## Second Cause of Action
### (Indemnification)

43. Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "42" with the same force and effect as though more fully set forth herein at length.

44. At all material times, on January 9, 2017, Plaintiff was using the Unit C engine for the purpose and in the manner intended.

45. That on or about January 9, 2017and for a period of time prior thereto, said machine was in a dangerous, defective and unsafe condition and not fit for the purpose intended.

46. That on or about January 9, 2017, the Unit C was caused to be damaged due to the use of inferior welding materials manufactured, sold and/or distributed by Samsung and or their subsidiaries and agents.

47. That the foregoing damage was caused solely by reason of the carelessness and negligence on the part of the Samsung, its subsidiaries, agents, servants and/or employees, in the design, testing, manufacturing, sale, inspection or marketing of the aforesaid Unit C and its component parts, and in failing to warn of its dangerous, defective and unsafe condition, without any negligence on the part of the Plaintiff contributing thereto.

48. In the Coordination Agreement entered into between Plaintiff and Samsung, Samsung agreed to waive all defenses to any liability alleged in connection with the construction and implementation of Unit C.

49. That by reason of the foregoing, Plaintiff has been damaged in an amount of $642,226.77.

**Third Cause of Action**
**(Breach of Warranty)**

50. Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "49" with the same force and effect as though more fully set forth herein at length.

51. That the defendant, its subsidiaries, agents, servants and/or employees warranted and represented to all persons whom they could foresee would be injured by a breach of said warranty and representation that the engine was in a safe, adequate and proper condition and was properly and adequately tested, inspected, assembled, distributed, serviced, repaired in proper operating condition, and that said machine was harmless, free from defects and in no way inherently dangerous and was in no way calculated to impair the life and limb of such persons who were carefully and prudently using the said machine for the purpose intended, and that said machine was of merchantable quality and was fit for the purpose intended.

52. At all times relevant, said machine was being used for the purpose and in the manner intended.

53. At all times relevant, Plaintiff was unaware of the dangerous and defective condition of the said turbine which made it unsafe and unfit for the purpose for which it was intended.

54. Failure of the turbine at issue had the potential to cause a catastrophic environmental event.

55. At all times relevant, Plaintiff could not, in the reasonable exercise of due diligence, discover said dangerous and defective nature and condition.

56. That as a result of the breach of the said warranties and representations on the part of the defendant, its subsidiaries, agents, servants and/or employees and in causing, allowing and permitting the said machine to be improperly and defectively tested, inspected, assembled, distributed, serviced, maintained and repaired, and distributed in an inherently dangerous and defective condition and unfit for use as intended, Plaintiff was caused to suffer damages.

57. That by reason of the foregoing, Plaintiff's subrogor has been damaged in an amount of $642,226.77.

**Fourth Cause of Action**
**(Breach of Implied Warranty of Merchantability)**

58. Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "57" with the same force and effect as though more fully set forth herein at length.

59. The aforesaid turbine was not fit for the ordinary purposes for which such goods are used.

60. Defendant breached the implied warranty of merchantability.

61. That as a result of the breach of the said warranties and representations on the part of the defendant, its subsidiaries, agents, servants and/or employees and in causing, allowing and permitting the said machine to be improperly and defectively tested, inspected, assembled, distributed, serviced, maintained and repaired, and distributed in an inherently dangerous and defective condition and unfit for use as intended, Plaintiff's subrogor was caused to suffer damages.

62. That by reason of the foregoing, Plaintiff has been damaged in an amount of $642,226.77.

**Fifth Cause of Action**
**(Strict Liability)**

63. Plaintiff repeats, reiterates and realleges each of the allegations contained in paragraphs "1" through "62" with the same force and effect as though more fully set forth herein at length.

64. At all times relevant, defendant was the manufacturer, seller and/or supplier of the aforesaid engine.

65. At all times relevant, the aforesaid product was defective in its design, manufacture and by virtue of the defendants' failure to warn of its inherent dangers.

66. At all times relevant, the defects existed at the time the product left defendant's hands.

67. That the defects rendered the product in a condition which was not reasonably safe.

68. Failure of the turbine at issue had the potential to cause a catastrophic environmental event.

69. At all times relevant, the product was being used for the purpose and in the manner normally intended or for an unintended but reasonably foreseeable purpose.

70. That by reason of the foregoing, Plaintiff's subrogor has been damaged in an amount of $642,226.77.

WHEREFORE, plaintiff requests:

(a) That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

(b) That judgment may be entered in favor of Plaintiff against Defendants on the First, Second, Third, Fourth and Fifth Causes of Action for the amount of $642,226.77, and

(c) That this Court will grant to Plaintiff such other and further relief as may be just and proper, including an award of prejudgment interest and costs.

Dated: New York, New York
July 1, 2020

> Yours, etc.,
>
> **CARUSO GLYNN, LLC**
> Attorneys for Plaintiff
> *AIG Seguros Mexico S.A. de C.V.*
> *a/s/o Compresion Altamira S.A. de C.V.*
>
> By: *Lawrence C. Glynn*
> Lawrence C. Glynn
> 242-03 Northern Blvd.
> Suite 201
> Little Neck, N.Y. 11362
> (718) 819-8667
> lglynn@carusoglynn.com
> CG File No.: 42.120419.01

## VERIFICATION

LAWRENCE C. GLYNN, under the penalties of perjury, hereby affirms:

That he is an attorney admitted to practice before the Courts of this State and is a member of the firm of **CARUSO GLYNN, LLC**, attorneys for Plaintiff herein.

That he has read the foregoing Verified Complaint and knows the contents thereof and that the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief and as to those matters, he believes them to be true.

Deponent further says that the sources of his information and the grounds for his belief as to all matters therein stated to be alleged on information and belief, is derived from documents, records, correspondence and memoranda of Plaintiff concerning the maters set forth in the Verified Complaint in the possession of deponent.

Dated: Little Neck, N.Y.
      July 1, 2020

*Lawrence C. Glynn*
Lawrence C. Glynn